UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON REZENDES, on behalf of
himself and all others similarly
situated,

       Plaintiffs,

v.                         Case No. 8:14-cv-1401-T-33TBM

DOMENICK'S BLINDS & DECOR, INC.,
a Florida corporation, and
DOMENICK FALCONETTI,
individually,

       Defendants.
_____/

**ORDER**

This matter is before the Court pursuant to Plaintiffs
Jason Rezendes and Adriana Helfrich's Motion for Summary
Judgment as to Liability on Count I of the Amended Complaint
(Doc. # 63), filed on March 2, 2015.  On April 13, 2015,
Defendants Domenick's Blinds & Decor, Inc. and Domenick
Falconetti filed a Response in Opposition to the Motion (Doc.
# 74), to which Plaintiffs replied (Doc. # 79) on April 27,
2015.  Also before the Court is Plaintiffs' Motion to Exclude
and/or Strike Defendants' Summary Judgment Evidence based upon
Improper Changes on Errata Sheets (Doc. # 77) and Plaintiffs'
Motion to Strike Portions of Affidavit of Domenick Falconetti
(Doc. # 78), both filed on April 20, 2015.  Defendants
responded to both Motions on May 4, 2015. (Doc. ## 80, 81).

The Court grants Plaintiffs' Motion for Summary Judgment
as to Liability, grants Plaintiffs' Motion to Exclude and/or

Strike Defendants' Summary Judgment Evidence based upon Improper Changes on Errata Sheets to the extent that the Court disregards substantiative changes contained in errata sheets tendered by Mr. Falconetti, and grants in part Plaintiffs' Motion to Strike Mr. Falconetti's Affidavit for the reasons that follow.

## I.   Background

Domenick's Blinds is a retail seller, installer, and manufacturer of window treatments. (Helfrich Aff. Doc. # 64-15 at ¶ 3).  Domenick and Lois Falconetti have owned Domenick's Blinds since April of 2009. (Mr. Falconetti Dep. Doc. # 64-1 at 9). Mr. Falconetti is the President of the company. (Id. at 11).  He is present in the store on a daily basis, arriving at 9:00AM and leaving at 5:00PM, but not necessarily staying in the store for the entire duration of the day. (Id.). Mrs. Falconetti is the Human Resources Manager, and is in the store for approximately two to four hours per week. (Mrs. Falconetti Dep. Doc. # 64-13 at 5).  However, during her deposition, Mrs. Falconetti clarified that she has no training in human resources and that she considers her main responsibilities to be answering the telephone, cleaning the store, and purchasing birthday cakes. (Id. at 3).  She specified that:

> I know my husband referred to me as human resources
> in his deposition, that I was a human resources
> person.  He would call me his human resources girl.
> I would just be the person to do [the] birthdays

2

> and birthday cakes and just keep the peace and
> harmony.  That's all.  It's a mom and pop kind of
> store . . . so that's really all that was needed.

(<u>Id.</u>).  Mrs. Falconetti also indicated that she does not know
"who was in charge of ensuring compliance with the various
laws" such as the FLSA. (<u>Id.</u> at 4).

Mr. Falconetti hired the Plaintiffs in this case, Jason
Rezendez and Adriana Helfrich, and classified them as
independent contractors. (Rezendes Aff. Doc. # 64-14 at ¶¶ 5,
6; Helfrich Aff. Doc. # 64-15 at ¶ 8).  When hired, Plaintiffs
were required to provide Mr. Falconetti with "contact
information, their driver's license, [and] a photo ID," which
Defendants maintained in a personnel "folder." (Mr. Falconetti
Dep. Doc. # 64-2 at 39; Camardo Dep. Doc. # 64-5 at 19-20).

Mr. Falconetti set Rezendes and Helfrich's pay rates,
gave them the opportunity to receive merit-based pay raises,
and paid them Christmas bonuses. (Mr. Falconetti Dep. Doc. #
64-1 at 39; Doc. # 64-3 at 25; Rezendes Aff. Doc. # 64-14 at
¶¶ 8-11; Helfrich Aff. Doc. # 64-15 at ¶¶ 9-11). Rezendez
worked for Domenick's Blinds for 23 months beginning in
February of 2012, and Helfrich worked for Domenick's Blinds
for 12 months beginning in January of 2013. (Rezendes Aff.
Doc. # 64-14 at ¶ 19; Helfrich Aff. Doc. # 64-15 at ¶ 14).

**A.   <u>Rezendes</u>**

Although Mr. Falcometti classified Rezendez as an

installer, the record reflects that Rezendez completed many different duties at Domenick's Blinds.  Mr. Falconetti testified that Rezendez completed the following tasks: answering the store telephone; greeting customers in the store; opening the store in the morning; closing the store in the evening; making sales; troubleshooting; running the payroll for Domenick's Blinds (including calculating commissions); scheduling appointments; making debt collection calls to non-paying customers; picking up products; buying supplies; making computer entries; and installing blinds. (Mr. Falconetti Dep. Doc. # 64-1 at 34, 37-38, 40, 45).  When Rezendes purchased items for use at Domenick's Blinds (such as office supplies, coffee cream, and gas for his vehicle), he was reimbursed by Mr. Falconetti. (Id. at 46).

Mr. Falconetti remarked that completing installations was only 5% of Rezendes' duties and that Rezendes spent 30% to 40% of his time making sales. (Id. at 48).  Mr. Falconetti hired Rezendes even though Rezendes had no experience in the window blind industry, and Rezendes shadowed Mr. Falconetti for the first month of his employment to come to understand the business. (Id. at 17).  Rezendes indicated in his affidavit:

> Falconetti instructed me as to all facets of working in the business, such as how to sell product, meet with customers, answer phones, receive payments, order products, install and repair products, and schedule appointments for sales and installations, among other tasks. I was

4

also required to study Defendants' sales manuals for each product line sold at Domenick's Blinds, in order to familiarize myself with sales techniques and product ordering information.

(Rezendes Aff. Doc. # 64-14 at ¶¶ 39-43).

Domenick's Blinds also paid for Rezendes to attend training in Pensacola, Florida. (Mr. Falconetti Dep. Doc. # 64-4 at 9-10). Drew Tenniman, the owner of a private payroll company utilized by Domenick's Blinds, advised Mr. Falconetti to categorize Rezendes as an employee, but Mr. Falconetti chose to categorize Rezendes as an independent contractor. (Mr. Falconetti Dep. Doc. # 64-1 at 19).

Mr. Falconetti indicated that Rezendes had access to a company vehicle as well as tools (such as screws, drill bits, and ladders) supplied by Domenick's Blinds. (Id. at 46, 24). Rezendes stated in his affidavit that "[v]irtually all tools I used in performing my job were owned and provided to me by Defendants. For example, Defendants provided me with the company's computer, phones, credit card payment machine, and numerous other items." (Rezendes Aff. Doc. # 64-14 at ¶ 57). Rezendes further indicated: "I made no investment of my own in the tools or facilities I used at Domenick's Blinds; I had previously owned a small hand drill." (Id. at ¶ 60). Rezendes did not possess a professional license or carry liability

insurance. (<u>Id.</u> at ¶ 22).[1]

Rezendes received commissions and was also paid an hourly wage at a rate set by Mr. Falconetti. (Mr. Falconetti Dep. Doc. # 64-1 at 48).[2] During his tenure at Domenick's Blinds, Mr. Falconetti rewarded Rezendes with merit based pay raises and discretionary Christmas bonuses. (<u>Id.</u> at 49). Domenick's Blinds also provided Rezendes with "sick leave." (Mr. Falconetti Dep. Doc. # 64-2 at 38). The record supports Rezendes' assertion that he routinely worked over 40 hours per week and kept records of his hours worked; however, Mr. Falconetti never paid Rezendes overtime wages. (Mr. Falconetti Dep. Doc. # 64-1 at 30, 54). Specifically, Rezendes was in the store in the morning before Mr. Falconetti arrived at 9:00AM and remained in the store after Mr. Falconetti departed at 5:00PM. (<u>Id.</u> at 32-33). In addition, the store was open on Saturdays, and Rezendes worked every weekend. (Mr. Flaconetti Dep. Doc. # 64-2 at 37).

Mr. Falconetti testified that he required Rezendes to advise him of Rezendes' whereabouts at all times, and, if

---

[1] During his deposition, Mr. Falconetti tellingly testified that he required his independent contractors to provide proof of liability insurance, but he did not ask Rezendes or Helfrich to prove that they carried liability insurance. (Mr. Falconetti Dep. Doc. # 64-2 at 7).

[2] Rezendes' starting pay rate of $12.50 per hour was increased to $13.00 in July of 2012, and to $13.50 in January of 2013. (Doc. # 64-17 at 2).

Rezendes wanted time off or needed to utilize "paid sick leave," he was "always" required to provide advance notice to Mr. Falconneti. (<u>Id.</u> at 18, 37-38; Doc. # 64-3 at 13).  If Rezendes failed to show up at work, Mr. Falconetti would call, text, and message Rezendes to direct him to come into the office immediately. (Mr. Falconetti Dep. Doc. # 64-1 at 40). Mr. Falconetti testified that it was a "problem" when Rezendes cared for sick relatives, such as his grandmother, and that he was "disappointed" that Rezendes was not working when Rezendes had a death in the family. (<u>Id.</u> at 15; Doc. # 64-2 at 18-19). Ultimately, Mr. Falconetti terminated Rezendes based on his "failure to call when absent from work." (Doc. # 64-18 at 8; Mr. Falconetti Dep. Doc. ## 64-1 at 15; 64-3 at 41).

**B.   Helfrich**

Helfrich is a seamstress hired by Domenick's Blinds to sew custom window treatments. (Helfrich Aff. Doc. # 64-15 at ¶ 4). Helfrich indicates: "When I was hired by Falconetti, there were no discussions as to any set time frame during which the work relationship would last.  My understanding was that I would work for Defendants indefinitely." (<u>Id.</u> at ¶ 13).[3]  Upon Helfrich's hire, Domenick's Blinds purchased

---

[3] Rezendes likewise indicated that he "would work for Defendants indefinitely" and that his employment was not limited to a specific time frame. (Rezendes Aff. Doc. # 64-14 at ¶ 16).

commercial sewing equipment for her to use in the store. (Id. at ¶ 32). Helfrich did not personally own a commercial sewing machine. (Id. at ¶ 30). In addition to sewing curtains, she also answered the Domenick's Blinds telephone, ordered supplies, scheduled appointments, met with customers, and performed other tasks. (Id. at ¶ 16). Anytime that Helfrich expended her personal resources on supplies for Domenick's Blinds, she was reimbursed. (Id. at ¶ 10). She was "in training" to become a sales person. (Mr. Falconetti Dep. Doc. # 64-2 at 49). Helfrich did not have a professional license and did not carry liability insurance. (Helfrich Aff. Doc. # 64-15 at ¶ 20).

Mr. Falconetti classified her as an independent contractor and remarked to Helfrich that she would make more money as an independent contractor, as opposed to an employee. (Id. at ¶ 8). Helfrich was paid by the hour at the rate of $11.00, determined by Mr. Falconetti, with the opportunity to earn merit-based pay increases. (Id. at ¶¶ 9, 12).[4] Helfrich correctly wrote down her weekly hours, which often exceeded 40 hours per week. (Id. at ¶¶ 27-28). Mr. Falconneti testified that it was "understood" but not "discussed" that Helfrich would not be paid for the hours she spent correcting her

---

[4] Like Rezendes, Helfrich was also paid a Christmas bonus. (Helfrich Aff. Doc. # 64-15 at ¶ 11).

sewing mistakes. (Mr. Falconetti Dep. Doc. # 64-3 at 28).
Helfrich likewise stated in her affidavit that: "Falconetti
frequently required me to remake window treatments due to
mistakes he claimed I made in my sewing work." (Helfrich Aff.
Doc. # 64-15 at ¶ 18).   As with Rezendez, Helfrich was not
paid overtime compensation. (Mr. Falconetti Dep. Doc. # 64-3
at 29).

## II.  <u>Procedural History</u>

On June 12, 2014, Rezendes filed a Fair Labor Standards
Act Complaint seeking overtime pay from Domenick's Blinds and
Mr. Falconetti. (Doc. # 1).  Defendants filed their answer and
affirmative defenses, as well as counterclaims for conversion,
intentional interference with business relationships, and
defamation, on July 7, 2014. (Doc. # 10).  Thereafter, on
August 5, 2014, Defendants agreed to dismiss their state law
counterclaims against Rezendes without prejudice. (Doc. ## 18,
19).

On September 3, 2014, Helfrich filed an opt-in notice
signifying her joinder in this action pursuant to 29 U.S.C. §
216(b). (Doc. # 30).  On September 17, 2014, Plaintiffs filed
a Notice of Settlement (Doc. # 36), and thereafter Plaintiffs
sought Court approval of the settlement. (Doc. # 38).   In
Plaintiffs' Motion for Court Approval of the Settlement,
Plaintiffs remarked that the parties were not in agreement

regarding certain portions of the settlement, particularly taxation concerns. On October 2, 2014, Defendants responded to Plaintiffs' Motion for Court Approval raising a host of issues upon which the parties could not reach an accord. (Doc. # 40). After holding a hearing, the Court denied Plaintiffs' Motion for Court approval of the settlement. (Doc. ## 48, 49).

On October 15, 2014, Plaintiffs filed an Amended Complaint. (Doc. # 51). In Count One, Plaintiffs seek unpaid overtime wages under the FLSA, and in Count Two, Plaintiffs seek unpaid minimum wages under the FLSA. Defendants filed an Answer and Affirmative Defenses on October 30, 2014. (Doc. # 53). Plaintiffs filed a Motion for Summary Judgment as to liability only on March 2, 2015. (Doc. # 63). The Motion is ripe for the Court's review.

In addition to the Motion for Summary Judgment, Plaintiffs seek an Order striking portions of Mr. Falconetti's affidavit submitted in response to the Motion for Summary Judgment, noting that certain affidavit statements materially conflict with sworn deposition testimony or are not based on personal knowledge. Plaintiffs also point out that Mr. Falconetti attempts to use multiple errata sheets to materially alter his deposition statements. Plaintiffs seek an Order excluding evidence based on Mr. Falconetti's improper changes on his errata sheets. The Court will address the

10

affidavit and errata sheet issues before addressing the Motion
for Summary Judgment.

### III. __Mr. Falconetti's Errata Sheets__

Mr. Falconetti is the owner of Domenick's Blinds, and his
deposition testimony reflects his significant involvement in
that company's management and operation.   During his
deposition, he provided detailed answers to counsel's
questions – particularly questions aimed at determining
whether the Plaintiffs in this action were improperly
classified as independent contractors instead of employees.

As an example, Mr. Falconetti originally testified that
he utilized a payroll company owned by Andrew Tennimon and
that "Drew" advised him that Rezendes should have been
classified as an employee as opposed to an independent
contractor.   Later, Mr. Falconetti submitted errata sheets
that changed his deposition testimony to say the opposite:

> **Original Testimony**
> Q:   And Drew told Mr. Rezendes that he should be
>       an employee?
> A:   Yes.
> Q:   Did Drew tell you that Mr. Rezendes should be
>       an employee?
> A:   Yes.

(Mr. Falconetti Dep. Doc. # 64-1 at 19).

> **New Testimony**
> Q:   And Drew told Mr. Rezendes that he should be
>       an employee?
> A:   I don't know.
> Q:   Did Drew tell you that Mr. Rezendes should be
>       an employee?

11

A:   No.

(Doc. # 77-1 at 2).

This is just one of many examples of Mr. Falconetti's attempts to change his deposition testimony via errata sheets. Other striking examples follow:

**Original Testimony:**
A:   His work schedule was 9 to 5.
Q:   [Mr. Rezendes] was scheduled from 9 to 5?
A:   Right, and he's supposed to have an hour off for lunch.
Q:   Was that a schedule that you made for him?
A:   It was verbal.

(Mr. Falconetti Dep. Doc. # 64-1 at 69-70).

**New Testimony:**
A:   His work schedule was 9 to 5.
Q:   [Mr. Rezendes] was scheduled from 9 to 5?
A:   He set his own schedule within the hours of 9-5 when the clients are available.

(Doc. # 77-1 at 2).

**Original Testimony:**
Q:   Is it fair to say that for a period of time [Mr. Rezendes] was your right-hand man at the company?
A:   He was my shadow.   That's correct.   He was like an assistant.

(Mr. Falconetti Dep. Doc. # 64-2 at 15).

**New Testimony:**
Q:   Is it fair to say that for a period of time [Mr. Rezendes] was your right-hand man at the company?
A:   He was never my right-hand man or assistant.

(Doc. # 77-1 at 1).

Errata sheets are governed by Rule 30(e) of the Federal Rules of Civil Procedure, which states in part:

12

> [T]he deponent must be allowed 30 days after being
> notified by the officer that the transcript or
> recording is available in which:
> (A)  to review the transcript or recording; and
> (B)  if there are changes in form or substance, to
>      sign a statement listing the changes and the
>      reasons for making them.

The Eleventh Circuit has addressed improper usage of errata sheets.  In <u>Norelus v. Denny's, Inc.</u>, 628 F.3d 1270 (11th Cir. 2010), the plaintiff's attorney filed a 63-page errata sheet containing 868 attempted changes to the plaintiff's deposition testimony at the trial court level. <u>Id.</u> at 1273.  The district court imposed sanctions on plaintiff's counsel and the Eleventh Circuit affirmed, remarking that "submission of the novella-length errata sheet making a slew of material changes in their client's deposition testimony was improper." <u>Id.</u> at *26.

In this case, the Court determines that it is appropriate to strike the errata sheets submitted by Mr. Falconetti. Although Rule 30, Fed. R. Civ. P., generally permits changes to the form or substance of deposition testimony, the Rule also indicates that a reason must be provided for the changes in testimony.  In this case, it is undisputed that Mr. Falconetti did not provide any reason for making sweeping changes to material aspects of his testimony. The requirements of Rule 30(e) must be strictly complied with by a deponent wishing to change his testimony. <u>See</u> <u>United Subcontractors,</u>

Inc. v. Darsey, No. 3:13-cv-603, 2013 U.S. Dist. LEXIS 158333, at *4 (M.D. Fla. Nov. 5, 2013)("As Darsey admittedly failed to provide sufficient reasons, the errata sheet . . . did not comply with the requirements of Rule 30(e)."); EBC, Inc. v. Clark Bldg. Sys. Inc., 618 F.3d 253, 265 (3d Cir. 2010)("The procedural requirements of Rule 30(e) are clear and mandatory.").

Mr. Falconetti's failure to comply with the procedural requirements of Rule 30(e) warrants an Order striking his errata sheets.  However, even if he had complied with the procedural requirements by providing a basis for changing his testimony, the Court determines that it would be appropriate to strike the errata sheets due to the broad changes he attempts to interject.  The Court acknowledges that there is a split in authority over whether substantive changes to deposition testimony are permitted in the absence of confusion during the deposition. Candy Craft Creations, LLC v. Gartner, No. 212-091, 2015 U.S. Dist. LEXIS 44646, at *27 (S.D. Ga. Mar. 31, 2015)("Plaintiff points out that federal courts have taken two approaches to errata changes, one strict and one lenient.").  Compare Jakobot v. Am. Airlines, Inc., No. 10-61576, 2011 U.S. Dist. LEXIS 64824, at *10 (S.D. Fla. June 20, 2011)("material alteration to original testimony is inappropriate and will not be considered") with Cultivos

Yadran, S.A. v. Rodriguez, 258 F.R.D. 530, 533 (S.D. Fla. 2009)("[T]he broad interpretation approach furthers the purpose of the discovery process - to allow the parties to elicit the true facts of a case before trial.")(internal citation omitted).

In Reynolds v. IBM, 320 F. Supp. 2d 1290, 1300 (M.D. Fla. 2004), aff'd 125 F. App'x 982 (11th Cir. 2004), the court persuasively explained that Rule 30(e) "cannot be interpreted to allow one to alter what was said under oath.  If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard.  A deposition is not a take home examination."

The Third Circuit Court of Appeals has also provided a helpful discussion of the issue presented:

> A district court does not abuse its discretion under Rule 30(e) when it refuses to consider proposed substantive changes that materially contradict deposition testimony, if the party proffering the changes fails to provide sufficient justification.  At the same time, we emphasize that courts may, in their discretion, choose to allow contradictory changes . . . as the circumstances may warrant.

EBC, Inc., 618 F.3d at 268.

Mr. Falconetti's attempt to change his testimony is presented in a manner similar to the deponent in Darsey, 2014 U.S. Dist LEXIS 3197.  There, the deponent made material

changes to his testimony, including "changing answers from
'yes' to 'no.'" Id. at *4. That court determined that
"submitting an errata sheet with a slew of material changes is
improper absent confusion at the deposition. As Darsey
attempted to submit just such an errata sheet, the sheet was
due to be stricken." Id. at *5. This Court likewise will not
consider the proposed changes to Mr. Falconetti's deposition
in addressing the Motion for Summary Judgment and strikes the
errata sheets.

**IV.  Mr. Falconetti's Affidavit**

On March 25, 2015, Mr. Falconetti submitted his affidavit
in connection with Defendants' Response to Plaintiffs' Motion
for Summary Judgment. (Mr. Falconetti Aff. Doc. # 75-1).
Plaintiffs seek an Order striking paragraphs 4, 11, 12, 14,
15, 17, 21, and 26 as not based on personal knowledge. These
affidavit statements contain phraseology - such as "I believe"
and "it was my understanding" - which are indicative of a
lack of personal knowledge. In addition, Plaintiffs request
that the Court strike paragraphs 2, 7, and 21 of Mr.
Falconetti's declaration as a sham affidavit because such
affidavit statements contradict prior sworn deposition
testimony. The Court grants the Motion in part.

**A.  Personal Knowledge**

When responding to a motion for summary judgment, the

opposing party "bears the burden of persuasion and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and set forth specific facts showing that there is a genuine issue for trial." Morton v. Walker, No. 8:09-cv-1986-T-33TBM, 2012 U.S. Dist. LEXIS 13838, at *12 (M.D. Fla. Feb. 6, 2012)(internal citation omitted).   Affidavits submitted in response to a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4).   The "personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief' — instead of knowledge — from raising genuine issues of fact sufficient to defeat summary judgment." Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002). "Belief, no matter how sincere, is not equivalent to knowledge." Id. at 1279.   Thus, "an affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to . . . creat[e] a genuine issue of fact about the existence of that certain fact." Id.

The Court's review of Mr. Falconetti's affidavit reveals that a number of his statements are not based on personal knowledge.   For instance, as to Rezendes' alleged outside employment, Mr. Falconetti states: "I believe [Rezendes] did some outside work for others, including his grandmother and friends, but I was not privy to his outside work schedule."

(Mr. Falconetti Aff. Doc. # 75-1 at ¶ 14).   Likewise, Mr.
Falconetti states: "Mr. Rezendes may have advertised for
business, unbeknownst to me, as he used his home telephone
number on Domenick's Blinds quote sheets . . . ." (Id. at ¶
17).   In addition, as to Helfrich, Mr. Falconetti remarks that
"it was [his] understanding that she took work home where she
had her own sewing equipment." (Id. at ¶ 21).

It is not necessary for the Court to repeat every
affidavit statement provided by Mr. Falconetti in the absence
of personal knowledge.   The Court grants Plaintiffs' Motion to
Strike to the extent that it will disregard statements in the
following affidavit paragraphs, which reflect the absence of
personal knowledge by Mr. Falconetti:  4, 11, 12, 14, 15, 17,
21, and 26.

   B.   **<u>Sham Affidavit Doctrine</u>**

"When a party has given clear answers to unambiguous
questions which negate the existence of any genuine issue of
material fact, that party cannot thereafter create such an
issue with an affidavit that merely contradicts, without
explanation, previously given clear testimony." <u>Van T.
Junkins and Assocs., Inc. v. U.S. Indus., Inc.</u>, 736 F.2d 656,
657 (11th Cir. 1984).   The Eleventh Circuit deems such
affidavits to be "shams," and, although a court should not
reject an affidavit merely because it is at odds with

18

statements made in an earlier deposition, the court need not give credence to an affidavit that contradicts previous testimony without any valid explanation or clarification. See Moulton v. DeSue, No. 3:11-cv-382-J-37JBT, 2012 WL 5378807, at *1 (M.D. Fla. Oct. 31, 2012) ("The Court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation.") (internal quotation omitted).

The Court acknowledges that "the 'sham affidavit' doctrine[ ] should be applied 'sparingly.'" Mortg. Payment Prot., Inc. v. Cynosure Fin., Inc., No. 6:08-cv-1212, 2011 WL 2670081, at *4 (M.D. Fla. July 8, 2011) (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987)). "Before striking an affidavit, the court must find 'some inherent inconsistency' between an affidavit and the affiant's sworn testimony." Id. (quoting Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986)). "'If no inherent inconsistency exists, the general rule allowing an affidavit to create a genuine issue[,] even if it conflicts with earlier testimony in the party's deposition, governs.'" Id. (quoting Rollins, 833 F.2d at 1530). "Therefore, the Court must distinguish between 'discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.'" Id. (quoting Tippens,

19

805 F.2d at 953).

In this case, Mr. Falconetti has provided affidavit statements which are inherently inconsistent with his prior sworn testimony as well as with Defendants' discovery answers. Specifically, during his deposition, Mr. Falconetti testified that he did not pay his commission salespeople on an hourly basis. (Mr. Falconetti Dep. Doc. # 64-1 at 41).  However, he states in his affidavit that he pays his "commission sales personnel" "on an hourly basis and commissions to be paid on [] sales." (Mr. Falconetti Aff. Doc. # 75-1 at ¶ 2).  In addition, Mr. Falconetti testified during his deposition that all of the relevant customers were "Domenick's Blinds customers." (Mr. Falconetti Dep. Doc. # 64-2 at 13).  Yet, in his affidavit, Mr. Falconetti indicates: "Mr. Rezendes did some installations for his sales, but primarily had his own sales customers and was asked on occasion to check on problems concerning installations or measurements." (Mr. Falconetti Aff. Doc. # 75-1 at ¶ 7). The Court accordingly strikes paragraphs 2 and 7 from Mr. Falconetti's affidavit.

In addition, in paragraph 21 of his affidavit, which is comprised of several separate statements, Mr. Falconetti indicates that Helfrich "received no training." (Falconetti Aff. Doc. # 78-1 at ¶ 21).  However, during his deposition, Mr. Falconetti specifically described Helfrich as "a

20

salesperson in training." (Mr. Falconetti Dep. Doc. # 64-2 at 49).   In addition, Mr. Falconneti responded "Admit" in response to Plaintiffs' discovery request that Defendants "Admit that Helfrich was provided with on-the-job training in order to perform work for Defendants." (Doc. # 78 at 7).

The Court accordingly strikes from paragraph 21 of Mr. Falconetti's affidavit his statement that Helfrich received no job training.   The Court, however, declines to strike the remaining statements contained in paragraph 21 of Mr. Falconetti's affidavit. Specifically, Plaintiffs suggest that the Court should strike Mr. Falconetti's affidavit statement that Helfrich "was free to work for others on her own time." (Mr. Falconetti Aff. Doc. # 78-1 at ¶ 21).   Plaintiffs point out that Mr. Falconetti stated during his deposition that he "would not have retained [Ms. Helfrich's] services any more" if Ms. Helfrich "open[ed] up her own business and start[ed] competing with [Domenick's Blinds] while she was working for [Domenick's Blinds]." (Mr. Falconetti Dep. Doc. # 64-3 at 6). However, the inquiry of whether Ms. Helfrich was permitted to work for others and whether she would be permitted to open a competing enterprise are not the same question and do not necessarily command the same answer from Mr. Falconetti.

Thus, the Court grants Plaintiffs' Motion to Strike in part as specified above.

V.     **Motion for Summary Judgment**

A.     **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine

22

issue for trial. Id.

### B.   **Employee vs. Independent Contractor**

The FLSA's overtime provisions apply to employees, but not independent contractors. Perdomo v. Ask 4 Realty & Mgmt, Inc., 298 F. App'x 820, 821 (11th Cir. 2008). "A determination of employment status under the FLSA . . . is a question of law." Id.   In determining whether an individual is an employee, instead of an independent contractor, courts apply the "economic realities" test. Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1311-12 (11th Cir. 2013). This test requires the Court to "look past the labels the parties apply to their relationship, and to examine both whether Plaintiff's relationship to Defendant is that of a traditional employee and to what extent Plaintiff is economically dependent upon Defendants." Castro v. Sevilla Props., LLC, No. 13-cv-22466, 2013 U.S. Dist. LEXIS 181210, at *6 (S.D. Fla. Dec. 30, 2013).

In the Eleventh Circuit, courts consider the following factors in determining an individual's employment status:

(1)   the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
(2)   the alleged employee's opportunity for profit or loss depending upon his managerial skill;
(3)   the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
(4)   whether the service rendered requires a special skill;
(5)   the degree of permanency and duration of the working relationship; and

(6)  the extent to which the service rendered is an
     integral part of the alleged employer's
     business.

Scantland, 721 F.3d at 1312.   No one factor is outcome
determinative, nor is the list exhaustive. Id. "Ultimately, in
considering economic dependence, the court focuses on whether
an individual is 'in business for himself' or is 'dependent
upon finding employment in the business of others.'" Id.
(citing Mednick v. Albert Enters., Inc., 508 F.2d 297, 301-02
(5th Cir. 1975)).   As discussed below, the Court's
consideration of these factors leads to the inescapable
conclusion that Plaintiffs were improperly classified as
independent contractors.

### 1.   **Nature and Degree of Control**

"The economic reality inquiry requires [the court] to
examine the nature and degree of the alleged employer's
control, not why the alleged employer exercised such control."
Scantland, 721 F.3d at 1316.   The Eleventh Circuit has found
that the following factors, among others, are relevant to the
control inquiry: "whether the alleged employer (1) had the
power to hire and fire the employee, (2) supervised and
controlled employee work schedules and conditions of
employment, (3) determined the rate and method of payment, and
(4) maintained employment records." Villarreal v. Woodham, 113
F.3d 202, 205 (11th Cir. 1997).

24

The application of these factors and others militates in favor of finding that Rezendes and Helfrich were employees. Defendants had the right to hire and to fire with respect to both Plaintiffs, and placed no limitations on those rights by contract "as would often be the case in dealing with an independent contractor and a contractual clause imposing liability or a penalty for cancellation of the work." Solis v. A+ Nursetemps, Inc., No. 5:07-cv-182, 2013 U.S. Dist LEXIS 49595, at *18 (M.D. Fla. Apr. 5, 2013).

Plaintiffs were also subject to extensive control by Mr. Falconetti with respect to their assigned tasks and their work schedules.  Mr. Falconetti scheduled Rezendes to work during store hours from 9:00AM to 5:00PM, Monday through Friday with a one hour lunch break, as well as on Saturdays. (Mr. Falconetti Dep. Doc. # 64-1 at 24).  Similarly, Helfrich was expected to work "full time" in the store. (Helfrich Aff. Doc. # 64-15 at ¶ 26).

Rather than coming and going as he pleased, Rezendes was expected to abide by the aforementioned work schedule, and was required to inform Mr. Falconetti in the instance that he was unable to work for any reason.(Mr. Falconetti Dep. Doc. # 64-2 at 18, 37-38; Doc. # 64-3 at 13).  When Rezendes' duties required work outside of the store, he was expected to check in with Mr. Falconetti regularly and keep Mr. Falconetti

apprised of his whereabouts at all times. (Mr. Falconetti Dep. Doc. # 64-2 at 37; Doc. # 64-3 at 13).  On several occasions, when the store was busy and Rezendes was working for Defendants outside of the store, Mr. Falconetti instructed Rezendes to come to the store to work. (Mr. Falconetti Dep. Doc. # 64-1 at 40).  Even though Defendants provided Rezendes with sick leave, Mr. Falconetti took issue with Rezendes when Rezendes tended to sick and dying relatives instead of coming to work as scheduled. (Id. at 15; Doc. # 64-2 at 18-19). Ultimately, Mr. Falconetti terminated Rezendes as a "no call, no show" due to his failure to work scheduled hours.  (Mr. Falconetti Dep. Doc. # 64-1 at 15; Doc. # 64-3 at 41).

In addition, Rezendes and Helfrich were required to record their hours daily so that they could be paid on an hourly basis, at a rate determined by Mr. Falconetti.  In Solis, 2013 U.S. Dist. LEXIS 49595 at *18, the court observed that "[i]n an independent contractor relationship, the independent contractor normally has at least an equal say in the rate to be charged for particular work by bidding on the job or by posting or advertising standard rates for the work to be performed." Here, by contrast, Plaintiffs were paid an hourly rate that was set by Defendants, in addition to some commissions.  As discussed above, Plaintiffs were provided with merit-based pay raises and discretionary Christmas

bonuses, which militates in favor of finding employee status.

In addition to controlling the manner in which Plaintiffs were hired, paid, and scheduled to work, the record also reflects that Mr. Falconetti maintained personnel files for both Plaintiffs and provided training to both Plaintiffs. "The provision of training [] indicates an employee-employer relationship . . . [and] the non-provision of training indicates an independent contractor relationship." Robles v. RFJD Holding Co., Inc., No. 11-cv-62069, 2013 U.S. Dist. LEXIS 77524, at *13-14 (S.D. Fla. June 3, 2013). For instance, Rezendes "shadowed" Mr. Falconetti for the first month of his employment to learn the business, as Rezendes had no prior experience in the window treatment industry. (Mr. Falconetti Dep. Doc. # 64-1 at 17). In addition, Defendants paid for Rezendes to attend a training seminar in Pensacola, Florida, to learn about various window treatment products. (Mr. Falconetti Dep. Doc. # 64-4 at 9-10). Furthermore, Rezendes was required to study sales manuals containing sales techniques and product information on each product line sold by Defendants. (Rezendes Aff. Doc. # 64-14 at ¶¶ 39-43). Likewise, Defendants provided training to Helfrich, such as how to order materials and how to make sales. (Helfrich Aff. Doc. # 64-15 at ¶ 25). Mr. Falconetti described Helfrich as a salesperson "in training," during his deposition. (Mr.

Falconetti Dep. Doc. # 64-2 at 49).

Although "an employer does not need to look over his workers' shoulder every day in order to exercise control," it appears that Mr. Falconetti did exactly that in this case. Robles, 2013 U.S. Dist. LEXIS 77524, at *14. Defendants hired Plaintiffs to be at will employees, dictated their duties and their schedules, set their pay, maintained their personnel files, and trained them. The control Defendants exercised over Plaintiffs was significant, rather than de minimis, and militates in favor of finding employee status.

### 2.   Opportunity for Profit or Loss

Courts may find independent contractor status when a worker is able to garner additional income or profit through the exercise of managerial skill or increased efficiency in the manner or means of accomplishing the work. See Scantland, 721 F.3d at 1316-17. "The opportunity for profit and loss has more to do with relative investments, with control over larger aspects of the business, and with like forms of initiative." Harrell v. Diamond A Entm't, 992 F. Supp. 1343, 1351 (M.D. Fla. Nov. 28, 1997).

While both Plaintiffs had the opportunity to earn commissions, there is no indication in the record that Plaintiffs had the opportunity to earn additional income or profit through the exercise of managerial skill or increased

efficiency.  In addition, neither Plaintiff made an investment in Domenick's Blinds and neither Plaintiff faced a loss. Instead, Plaintiffs were paid hourly wages with the opportunity to earn commissions.  See Sakasci v. Quicksilver Delivery Sys., No. 8:06-cv-1297, 2007 U.S. Dist. LEXIS 88747, at *22 (M.D. Fla. Nov. 28, 2007)("because [defendant] controlled the factors primarily responsible for determining its [workers'] earnings, this factor weights in favor of finding an employment relationship"); Molina v. S. Fla. Express Bankserv, Inc., 420 F. Supp. 2d 1276, 1286 n. 28 (M.D. Fla. 2006) (stating that when a business controls the primary factors governing its workers' earnings, employee status is suggested). Upon due consideration, the Court determines that this factor weighs in favor of finding an employer-employee relationship.

### 3.   **Relative Investments of the Parties**

Courts may find independent contractor status when a worker invests in equipment or materials required for completing his tasks, or hires other workers to assist him in the completion of his tasks. Scantland, 721 F.3d at 1317. Here, neither of the Plaintiffs made any such investment. See also Demers v. Adams Homes of NW Fla., Inc., No. 6:06-cv-1235, 2007 U.S. Dist. LEXIS 82797 (M.D. Fla. Nov. 7, 2007) (that defendant paid for the majority of plaintiff's supplies

29

weighed in favor of an employer-employee relationship).   In fact, the record reveals that Plaintiffs were reimbursed if they ever purchased supplies for use at Domenick's Blinds. (Mr. Falconetti Dep. Doc. # 64-1 at 46).

In addition, Rezendes' occasional use of his household drill and Helfrich's alleged use of her personal sewing machine at her residence does not militate in favor of independent contractor status. Both Rezendes and Helfrich primarily utilized the equipment and supplies provided by Domenick's Blinds. In fact, when Helfrich was hired, Domenick's Blinds acquired commercial sewing equipment for her use. (Helfrich Aff. Doc. # 64-15 at ¶ 32). The Court compares such nominal and de minimis outlay with Defendants' substantial investments (including purchase of commercial sewing machines, office phones, computers, a merchant services machine, the store building, property insurance, marketing, all products, installation supplies, vehicles, and workforce) and concludes that this factor strongly favors employee status for Rezendes and Helfrich. See Harrell, 992 F. Supp. at 1350 (considering the employer's "material expenditures," which included "advertising, facilities, maintenance, etc.").

### 4.   Special Skill Required to Perform the Job

"A lack of specialization indicates that an individual is an employee, not an independent contractor." Molina, 420 F.

Supp. 2d at 1286. Further, "[r]outine work which requires industry and efficiency is not indicative of independence and nonemployee status." <u>Usery v. Pilgrim Equip. Co.</u>, 527 F.2d 1308, 1314 (5th Cir. 1976). "Finally, even if an individual has specialized skills, that is not indicative of independent contractor status where the individual does not use those skills in an independent fashion." <u>Molina</u>, 420 F. Supp. 2d at 1286.

Rezendes arguably possessed a specialized skill as an installer. However, it is undisputed that he completed installations only 5% of the time. (Mr. Falconetti Dep. Doc. # 64-1 at 48). The rest of his day was spent answering the phones, completing office work, making sales, and carrying out various other duties. (<u>Id.</u> at 34, 37-38, 40, 45). These are not specialized tasks. In addition, he did not have a business license or carry occupational insurance. (Rezendes Aff. Doc. # 64-14 at ¶ 22). Thus, this factor weighs in favor of finding employee status as to Rezendes.

Likewise, as a seamstress, Helfrich possessed a specialized skill. However, because she worked at the direction and control of Mr. Falconetti, it appears that she was not able to use her skills in an independent fashion. Also, taking into consideration that she did not have a business license or occupational insurance and that she was

31

controlled and directed by Mr. Falconetti, the Court determines that this factor militates in favor of finding employee status as to Helfrich. (Helfrich Aff. Doc. # 64-15 at ¶ 20).

### 5.   Permanency and Duration of Relationship

In <u>Clincy v. Galardi S. Entertainers</u>, 808 F. Supp. 1326, 1348 (N.D. Ga. 2011), the court indicated that a working relationship of less than one year is "transient or itinerant" and signaled independent contractor status. Rezendes worked exclusively for Defendants for a 23 month period, and Helfrich worked exclusively for Defendants for a 12 month period. The duration of Plaintiffs' working relationship with Defendants accordingly supports finding that they were employees, rather than independent contractors. In addition, because both Plaintiffs indicated that no temporal limitations were placed on their employment (and expected employment "indefinitely"), the Court determines that this factor favors employee status. (Helfrich Aff. Doc. # 64-15 at ¶ 13; Rezendes Aff. Doc. # 64-14 at ¶ 16).

### 6.   Integral Services

Finally, the Court considers the extent to which Plaintiffs' services were an integral part of Defendants' business. It is undisputed that Domenick's Blinds is a retail establishment that offers window treatments. Among other

32

duties, Helfrich created hand sewn curtains, and Rezendes sold and installed window treatments. Quite simply, the Court finds that these services were integral to Domenick's Blinds.  In addition to creating, selling, and installing window treatments, Plaintiffs assisted in office work, such as answering the telephone, greeting customers, and ordering materials.  Particularly as to Rezendes, he had access to Domenick's Blinds' bank account and wrote checks for supplies, paychecks, and reimbursements.  (Mr. Falconetti Dep. Doc. # 64-1 at 37-38, 40). He also prepared the Domenick's Blinds' payroll on a weekly basis. (<u>Id.</u>).  In addition, Rezendes made debt collection calls when clients failed to pay for window treatments. (<u>Id.</u> at 45).

"Generally, the more integral the work, the more likely the worker is an employee, not an independent contractor." <u>Robles</u>, 2013 U.S. Dist. LEXIS 77524, at *23. (internal citation omitted).  Under the facts presented, the Court determines that this factor also weighs in favor of finding employee status.

### 7.   <u>Examining the Record as a Whole</u>

In determining whether an employer-employee relationship existed between Plaintiffs and Defendants, "[n]o one factor is determinative;" "each factor should be given weight according to how much light it sheds on the nature of the economic

dependence of the putative employee on the employer." Perdomo, 298 F. App'x 821; see also Usery, 527 F.2d at 1311 ("No one of these considerations can become the final determinant, nor can the collective answers to all of the inquires produce a resolution which submerges consideration of the dominant factor – economic dependence."); Benshoff v. City of Va. Beach, 180 F.3d 136, 141 (4th cir. 1999) ("[t]he employer-employee relationship does not lend itself to rigid per se definitions, but depends upon the circumstances of the whole activity.").

Here, each of the relevant factors considered in the Court's calculus supports finding both Rezendes and Helfrich were employees rather than independent contractors. The Court accordingly grants the Motion to the extent that it finds Rezendes and Helfrich were employees entitled to the protections of the FLSA.

### C.  Individual Liability for Mr. Falconetti

"A corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally." Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986). In making an individual liability determination, the Court must "inquire as to whether the officer was involved in the compensation of employees, the hiring and firing of employees, or other matters in relation

to an employee." <u>Olivas v. A. Little Havana Check Cash, Inc.</u>, 324 F. App'x 839, 845 (11th Cir. 2009).  Summary Judgment in a plaintiff employee's favor on the issue of individual liability is appropriate when the individual corporate officer "hired [the plaintiff], set [the plaintiff's] rate of pay and schedule, and had the authority to discipline [the plaintiff]," in addition to "exercis[ing] the authority to hire and fire [the company's] employees, determine work schedules, and control [the company's] finances and operations." <u>Id.</u>

The Court's application of this standard leads to the conclusion that Mr. Falconetti is individually liable to the same extent as Domenick's Blinds for any violation of the FLSA. Mr. Falconetti hired the Plaintiffs, set their pay, established their schedules, and had the authority to discipline Plaintiffs.  In addition, Mr. Falconetti controlled Domenick's Blinds' finances and operations. The Motion for Summary Judgment is granted to the extent Plaintiffs seek a determination of individual liability as to Mr. Falconetti for any violation of the FLSA which may have occurred in this case.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs' Motion for Summary Judgment as to Liability

35

on Count I of the Amended Complaint (Doc. # 63) is
**GRANTED.**

(2)   Plaintiffs' Motion to Exclude and/or Strike Defendants'
Summary Judgment Evidence based upon Improper Changes on
Errata Sheets (Doc. # 77) is **GRANTED.**

(3)   Plaintiffs' Motion to Strike Portions of Affidavit of
Domenick Falconetti (Doc. # 78) is **GRANTED IN PART**
consistent with the foregoing.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>2nd</u>
day of June, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record